UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WAYNE M. MAXWELL,

    Petitioner,

v.                                              Case No. 6:22-cv-1190-JSS-RMN

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus (Petition, Dkt. 1) filed by Petitioner under 28 U.S.C. § 2254. Petitioner also filed a Memorandum of Law (Dkt. 3). Respondents filed a Response to Petition (Response, Dkt. 6) in compliance with this court's instructions. Petitioner filed a Reply (Dkt. 12) to the Response. For the reasons set forth herein, the Petition is denied.

### I.    PROCEDURAL BACKGROUND

The State Attorney in and for the Ninth Judicial Circuit charged Petitioner with two counts of capital sexual battery. (Dkt. 10-1 at 29-31.) A jury trial was held, and, after the State rested, Petitioner moved for a judgment of acquittal, which was denied as to Count One and granted as to Count Two. (*Id.* at 133, 148.) The jury found Petitioner guilty as to Count One. (*Id.* at 150.) The trial court adjudicated Petitioner guilty of the crime and sentenced him to life imprisonment. (*Id.* at 135-40.) Petitioner

filed a direct appeal, and Florida's Fifth District Court of Appeal (Fifth DCA) affirmed *per curiam*. (*Id*. at 865.)

Petitioner then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (*Id*. at 869-907.) The trial court denied relief. (*Id*. at 934-39). The Fifth DCA affirmed *per curiam*. (*Id*. at 1009.)

## II.   LEGAL STANDARDS

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

The AEDPA sets forth the standard for granting habeas relief on a claim that the state court has adjudicated on the merits. *See White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Under AEDPA, a federal court may only grant habeas relief on a claim if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary" to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by" the Supreme Court or decides a case differently than the Supreme Court when faced with a case involving materially indistinguishable facts. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Moreover, a state court decision constitutes an "unreasonable application" of clearly established federal law, where the court identifies the correct governing principles, but unreasonably applies those principles to a petitioner's case. *Id*. at 1261.

2

B.   **Standard for Ineffective Assistance of Counsel**

To prevail on an ineffectiveness claim, the petitioner must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must demonstrate that counsel's performance was deficient. To meet this prong, the petitioner must show that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. *Id*. at 687. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, and, consequently, counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id*. at 689. Next, the petitioner must demonstrate that prejudice was suffered because of that performance. *Id*. at 687. Prejudice is established when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the petitioner has made an insufficient showing on one. *See id*. at 697; *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001). Moreover, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review

3

is doubly so." *Harrington,* 562 U.S. at 105 (internal quotation marks and citations omitted).

### III. ANALYSIS

Petitioner alleges that his counsel was ineffective "for opening the door to uncharged allegations of sexual activity with the victim." (Dkt. 1 at 5.) According to Petitioner, during the prosecution's direct examination, the victim's mother testified that the victim "told her that the Petitioner pulled out his penis and tried to get her to touch it," and, because this allegation was uncharged sexual activity, counsel successfully objected to its admission. (Dkt. 3 at 24.) "Despite this successful objection, trial counsel then extensively cross-examined the mother about the very testimony to which she previously objected, doing so in an obvious effort to undermine the mother's credibility." (*Id.*) Petitioner asserts that, during cross-examination, the victim's mother admitted that she did not previously mention the victim's allegations concerning the uncharged acts "in her sworn statement to law enforcement, in her pretrial deposition, or in a child hearsay hearing convened before the trial." (*Id.*) Petitioner complains that this cross-examination "resulted in opening the door to the prosecution presenting a portion of the CPT video (recorded within 24 hours of the alleged offense) where [the victim] discusses these uncharged, unrelated allegations of sexual activity by the Petitioner and reports that she told her mother about them." (*Id.*)

This claim was raised in Petitioner's Rule 3.850 motion. The trial court denied the claim, finding:

> Counsel inquired about this uncharged event after the State brought it out on direct examination. *See* attached Trial Transcript ("Trial"), 135. This was clearly a strategy to impeach and discredit the witness. *Id*. at 110-12. Counsel asked the witness why she did not mention these acts during her deposition or the child hearsay hearings. *Id*. at 109-10. Counsel did not ask about the actual substance of that testimony; she only asked the witness if she previously mentioned it. Although counsel opened the door to this testimony, thereby allowing its mention in the video as well, no one inquired further about it or used it to prove Count Two. Therefore, it did not become a feature of the trial and did not prejudice Defendant.

(Dkt. 10-1 at 936.) The Fifth DCA affirmed.

The victim's mother testified on direct examination that the victim told her that Petitioner "put his finger in" her private parts and then "t[ook] his finger out and lick[ed] it," which was "something that [Petitioner] would do with" the victim's mother. (*Id*. at 478-79.) The prosecutor then asked the victim's mother, "And that's what [the victim] told you he did after he put his fingers in her?" (*Id*. at 479.) The victim's mother responded, "Yes. I also asked, [d]id he do anything else? Did he try to put his private parts in it? And she was like, he wanted me to touch it, but I wouldn't touch it." (*Id*.)

Petitioner's counsel objected, and a bench conference was held. (*Id*. at 479-80.) After hearing argument and noting that the witness had "just opened herself up for some serious cross-examination[,]" the trial judge sustained the objection because "it relate[d] to conduct that's not charged . . . ." (*Id*. at 480.) Petitioner's counsel requested time to discuss the matter with Petitioner, which the trial court granted. (*Id*. at 482.) Petitioner's counsel then informed the trial court that "I've had a chance to

5

discuss the motion for mistrial with my client. At this time, he would prefer to go forward and not request a mistrial, so I think we're ready to proceed." (*Id*.)

On cross-examination of the victim's mother, Petitioner's counsel questioned her at length about the fact that she informed no one that the victim told her that Petitioner wanted her to touch his penis. (*Id*. at 497-500.)

Upon conclusion of the testimony of the victim's mother, the State called Brandie Silvia as a witness. (*Id*. at 504.) When the crime occurred in this case, Silvia worked for the Child Protection Team (CPT) as a case coordinator. (*Id*.) She testified that she interviewed the victim at the CPT office. (*Id*. at 507.) The video of that interview was admitted into evidence over the objections of Petitioner's counsel. (*Id*. at 508–09.) After a portion of the interview was played, Petitioner's counsel asked to approach the bench. (*Id*. at 510–519.) At the bench, Petitioner's counsel stated that, in reviewing the transcript of the interview, there was a portion of the interview she neglected to ask the State to redact. (*Id*.). According to Petitioner's counsel, "[w]here I think it was unclear to me who she was talking about, but at this point, with what the mother has already said, it mentions seeing a boy's wee-wee." (*Id*.) Petitioner's counsel further stated, "[s]he is asked if she has ever seen a boy's wee-wee. She doesn't say who. And so I --either way, I do have an objection, at this point, to what is coming up in that video." (*Id*. at 519-20.) Petitioner's counsel objected based on relevance and "that it goes to an uncharged crime or uncharged person . . . ." (*Id*. at 520).

6

The trial court heard argument from the parties on the objection and overruled it:

> THE COURT: Okay. Well, this is how I'm seeing it, um, by impeaching the mother and calling into question - - directly into question her credibility, and also the child's credibility because the child didn't talk about it today, I think you opened the door to this coming in and I'm going to overrule your objection.

(*Id*. at 524.)  Petitioner's counsel again objected and argued that allowing this evidence "would severely prejudice Mr. Maxwell's ability to have a fair trial." (*Id*. at 524–25.) The trial court overruled the objection. (*Id*. at 525.)

The videotape of the interview continued, but the trial court interrupted the videotape and asked if a "limiting instruction" would be requested. (*Id*. at 527-28.) Petitioner's counsel decided against asking for a limiting instruction. (*Id*. at 529.)

Petitioner argues that "the strategy trial counsel sought to employ by cross examining [the victim's] mother was not a reasonable one" and that the result was "that[,] although the mother may not have mentioned it before, her daughter had discussed this very activity with the CPT interviewer and told the CPT interviewer that she previously reported this to her mother, just as her mother said she did." (Dkt. 3 at 26.)

Decisions involving trial strategy are virtually unchallengeable. *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir.2006).  Here, Petitioner's counsel made a strategic choice to cross-examine the victim's mother regarding her failure to provide information about the uncharged event prior to trial in order to impeach and discredit her.

7

Petitioner's counsel asked the victim's mother why she did not mention these acts during her deposition or the child hearsay hearings. (Dkt. 10-1 at 498–500.) Petitioner's counsel only asked the witness whether she had mentioned these acts previously.

"Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (citation and quotation omitted). *Strickland*'s presumption of correctness "operates with particular force when the conduct at issue relates to counsel's conduct of cross-examination." *See Love v. McCray*, 165 F. App'x 48, 49 (2d Cir. 2006). This is because on cross-examination counsel is required "to make rapid decisions based on the evidence that emerges during direct examination, and then to prioritize which points are worth raising and which are not." *Anderson v. Lee*, No. 19-cv-4488 (BMC), 2020 WL 5043906, at *8 (E.D.N.Y. Aug. 26, 2020). The court finds that counsel's decision as to what extent and in what manner to cross-examine the victim's mother was strategic and therefore fell within the wide range of acceptable professional assistance.

Petitioner's criticism of counsel's representation is nothing more than hindsight disagreement with counsel's unsuccessful trial strategy. *See Eze v. Senkowski*, 321 F.3d 110, 132 (2d Cir.2003) (providing that courts should "refus[e] to use perfect hindsight to criticize unsuccessful trial strategies"). Unsuccessful trial strategy is not enough to show that Petitioner's counsel's performance fell below an objective standard of reasonableness. *See Graham v. Dormire*, 212 F.3d 437, 440 (8th Cir. 2000) ("Reasonable

trial strategy does not constitute ineffective assistance of counsel simply because it is not successful."); *see also Elenniss v. United States*, No. 5:16CR0331, 2022 WL 767866, at *10 (N.D. Ohio Mar. 14, 2022) ("trial counsel's unsuccessful trial strategy, now viewed with the benefit of hindsight, is not a basis to disturb Petitioner's conviction based on ineffective assistance of counsel."). Petitioner has failed to establish that trial counsel's actions fell outside the wide range of reasonable, professionally competent assistance.

Moreover, even if counsel's strategy were unreasonable, Petitioner suffered no prejudice from this error, as there remained ample other evidence in the record to support Petitioner's conviction. Thus, Petitioner has failed to show a reasonable probability that the result of the trial would have been different if his counsel had chosen a different trial strategy when cross-examining the victim's mother.

Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, Petitioner's claim is denied.

### IV.    CERTIFICATE OF APPEALABILITY

This court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v.*

9

*Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot demonstrate that jurists of reason would find this court's procedural rulings debatable. Petitioner fails to make a substantial showing of the denial of a constitutional right. Thus, the court will deny Petitioner a certificate of appealability.

### V. CONCLUSION

Accordingly:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. This case is **DISMISSED with prejudice**.

3. The Clerk is directed to enter judgment in favor of Respondents and to close this case.

4. Petitioner is **DENIED** a certificate of appealability in this case.

**ORDERED** in Orlando, Florida on July 24, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record